U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

FEB 2 1 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JAMES HEFREN | CIVIL ACTION NO. 12-1899 |
| VERSUS | JUDGE DOHERTY |
| MURPHY EXPLORATION & PROD. CO., USA, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the "Motion for Partial Summary Judgment to Dismiss Contractual Indemnity Claims of McDermott, Inc." [Doc. 35] filed by cross-defendant Murphy Exploration & Production Company, USA ("Murphy"). In its motion, Murphy moves for "partial summary judgment to dismiss the claim asserted by defendant/cross-claimant, McDermott, Inc. ("McDermott") for contractual indemnity from the personal injury claims asserted by James Hefren," on grounds the foregoing claim is void under the Louisiana Oilfield Indemnity Act, LSA-R.S. §9:2780 ("LOIA"). The motion is opposed by defendant/cross-claimant McDermott, Inc., and Murphy has filed an "Unopposed Motion for Leave to File Reply Memorandum in Support of Motion for Partial Summary Judgment to Dismiss Contractual Indemnity Claims of McDermott, Inc." [Doc. 41], which is herein GRANTED.

**I.    Factual and Procedural History**

The instant litigation arises out of personal injuries allegedly sustained by plaintiff James Hefren, an employee of Murphy, while working on Murphy's FRONT RUNNER Spar as a lead

operator.[1] This Court adopts, *in toto*, the undisputed facts as set forth by Murphy in its motion, all facts relevant to this motion being undisputed by McDermott.[2]

The plaintiff initially filed suit against McDermott and Murphy on June 4, 2012 in the 16th Judicial District Court for the Parish of St. Mary Louisiana, asserting causes of action against both defendants for negligence [Doc. 1]. Murphy removed the matter to this Court on the basis of OCSLA and diversity jurisdiction [Doc. 1]. A subsequent First Supplemental and Amending Complaint [Doc. 19] substituted McDermott, Inc. as a defendant in lieu of the improperly-named J. Ray McDermott Gulf Contractors, Inc., and on May 2, 2013, this Court entered summary judgment in favor of Murphy, dismissing with prejudice the plaintiff's tort claims against Murphy as barred by the exclusive remedy provisions of the Longshore & Harbor Workers' Compensation Act [Doc. 29, Memorandum Ruling].

In its answer to the plaintiff's original Petition and First Amended Complaint, McDermott denies liability for the plaintiff's injuries, alleging the plaintiff's injuries were caused by his sole negligence or by the combined negligence of the plaintiff and Murphy. Also in its answer, McDermott asserts a cross-claim against Murphy, alleging McDermott is "entitled to a full and complete defense and indemnification, including payment of all costs and attorneys' fees from Murphy, for the claims asserted against McDermott, Inc. by James Hefren in the above-captioned

---

[1] The parties dispute exactly *how* the plaintiff was injured, however they largely agree the plaintiff was injured when a flange on which he was working struck him in the head and face. Murphy contends the plaintiff was injured "when a valve flange struck him in the face," while McDermott argues the plaintiff's source of injury was "the uncontrolled release of stored pressure and hydrocarbon fluids from the flange on which he was working which struck Hefren in the head and face." *See* Murphy's memorandum, Doc. 35-1, at p. 1; *see also* McDermott's memorandum, Doc. 38, at p. 5. The precise manner of injury is not relevant to the Court's analysis of the legal issue presented.

[2] For all citing references contained within the undisputed facts, *see* Murphy's Statement of Uncontested Facts, Doc. 35-3, which has not been controverted by McDermott.

and numbered matter."[3] The source of McDermott's claim for indemnification is Article 19 of the "Front Runner Engineering Procurement Construction Installation (EPCI) Contract (the "EPCI Contract") between McDermott and Murphy, which contains a reciprocal ("knock for knock") indemnity provision through which McDermott agreed to indemnify and defend Murphy for personal injury or death claims brought by McDermott employees and Murphy agreed to indemnify and defend McDermott for personal injury or death claims brought by Murphy employees.[4] Article 19.2 of the EPCI Contract provides in relevant part as follows:

> *[Murphy] agrees to indemnify, defend and save harmless [McDermott] from and against any and all claims, losses and expenses (including without limitation all costs, demands, damages, suits, judgments, fines, penalties, liabilities, attorney's fees, and causes of action of whatsoever nature or character*, whether known or unknown, and including without limitation claims, losses and expenses for property damage, bodily injury, illness, disease, death, pollution or loss of services, wages, consortium or society) *in any way, directly or indirectly, arising out of, or related to, the performance or subject matter of this AGREEMENT* or the ingress, egress, or presence on any premises (whether land, building, vehicle, platform, aircraft, vessel or otherwise) owned, operated, chartered, leased, used, controlled or hired by [Murphy] or [McDermott], and which are asserted by or arise in favor of OWNER *et al* (and / or any of their spouses, relatives, dependents, or estates), *and expressly including any claims, losses or expenses actually or allegedly caused by the sole, concurrent or partial negligence (of whatever nature or character), fault or strict liability of [McDermott]* or any other person or the unseaworthiness, unairworthiness or defective condition of vessels, craft or premises, whether or not preceding the execution of this AGREEMENT.[5]

Thus, McDermott's cross-claim against Murphy seeks two separate forms of relief, namely: (1) indemnification from Murphy for the claims asserted by the plaintiff against McDermott; and (2)

---

[3] *See* McDermott's opposition brief, Doc. 38, at p.3.

[4] *See* EPCI Contract, pp. 34 & 35, arts. 19.1 & 19.2, attached as Exhibit "D" to Murphy's motion for summary judgment, Doc. 35.

[5] *Id.* at ¶19.2 (emphasis added).

a full and complete defense from Murphy for those claims brought against McDermott by Hefren, including payment of all costs and attorney's fees. The instant motion, however, specifically seeks dismissal of *only* McDermott's claim for contractual indemnity to the extent such indemnification is for McDermott's own negligence.

## II.     Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en*

Case 6:12-cv-01899-RFD-CMH   Document 48   Filed 02/21/14   Page 5 of 11 PageID #: 596

*banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached*." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

### III. Law and Analysis

Before addressing the substance of the issues presented, this Court notes the manner in which the issues have been framed by the parties creates problems and challenges for the Court. Specifically, the instant motion seeks to dismiss only the claim for contractual indemnification alleged by McDermott against Murphy, and expressly does not seek dismissal of McDermott's claim for defense costs from Murphy. Additionally, the framing of the issue as to the application of the LOIA is equally obtuse. Nevertheless, this Court will address only that which is before it.

The parties do not dispute the application of OCSLA in the instant matter.[6] Nor do the

---

[6] OCSLA states in relevant part:

(2)(A) To the extent that they are applicable and not inconsistent with this

parties dispute that, under OCSLA, the surrogate law of the adjacent state to be applied in this matter is Louisiana law.[7] As Murphy's arguments on these points are uncontroverted by McDermott, this Court will assume, for the purposes of this motion, that OSCLA applies, and under OCSLA, Louisiana law applies to the interpretation of the contractual indemnity claim before the Court.

Neither party disputes that Louisiana has promulgated the LOIA, which provides in pertinent part:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, <u>which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee."</u>

La. Rev. Stat. §9:2780(B) (emphasis added).

Under Louisiana law, as interpreted by the Fifth Circuit, "[t]he LOIA was enacted generally to protect Louisiana oilfield contractors from over reaching principals who force the contractors

---

subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, <u>the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon,</u> which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

42 U.S.C. 1333(a)(2)(A) (emphasis added). It is well-settled that "OCSLA adopts the law of the adjacent state as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003).

[7] Although this Court has question as to the precise nature of the facility involved in the instant litigation and, thus, the factual underpinnings of the application of OCSLA, as neither party disputes the nature of the facility and the application of OCSLA, this Court will assume for the purposes of this motion only that OCSLA applies in this case, and under OCSLA, Louisiana law applies to McDermott's claim for contractual indemnification. With respect to the application of OSCLA and the precise nature of the facility in this case, this Court makes no substantive ruling regarding these entities, but rather, accepts the assumptions of the parties because the implications do not show a clear error.

through indemnity agreements to bear the risk of the principal's negligence." *Roberts v. Energy Development Corp.*, 104 F.3d 782, 784 (5th Cir. 1997), *citing* La. Rev. Stat. Ann. §9:2780[8]; *Rodrigue v. Legros*, 563 So.2d 248, 255 (La. 1990); and *Torres v. McDermott, Inc.*, 12 F.3d 521, 526 (5th Cir.1994). Therefore, "[t]he LOIA . . . nullifies indemnity agreements which protect the principal against its own fault at the expense of the contractor if the indemnity provisions are part of an agreement pertaining to an oil or gas well." *Roberts*, 104 F.3d at 784. The LOIA is broadly written and has been broadly interpreted by the Louisiana courts and federal courts interpreting Louisiana law. *Id.*, citing *Copous v. ODECO Oil & Gas*, 835 F.2d 115, 117 (5th Cir.1988); *Broussard v. Conoco, Inc.*, 959 F.2d 42, 45 (5th Cir.1992); *St. Amant v. Glesby-Marks Corp.*, 532 So.2d 963, 965

---

[8] The LOIA states in relevant part:

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
>
> C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

La. Rev. Stat. §9:2780(B) & (C).

(La. App. 5th Cir.1988).

In the instant case, in an earlier ruling on an unopposed motion for summary judgment filed by Murphy, this Court noted the following facts were undisputed by the parties:

1. The Front Runner is permanently affixed to the sea floor in Green Canyon Block 338 on the Outer Continental Shelf (OCS) of the Gulf of Mexico;

2. From its permanently affixed position in Green Canyon Block 338 of the OCS, <u>the Front Runner is utilized to explore, develop, produce, and transport resources from the OCS in furtherance of Murphy's oil and gas exploration, development, production, and transportation activities</u> . . .[9]

Notwithstanding the less-than-clear nature of the facility at issue and the activities occurring under the contract at the time of the alleged accident, Murphy likens the facility to a fixed platform drilling rig, and McDermott does not dispute that characterization. Courts interpreting the LOIA have held the Act is, also, applicable to a contract to refurbish a fixed platform drilling rig. *See Verdine v. ENSCO Offshore Co.*, 255 F.3d 985, 991 (5th Cir. 2001). *See also Wagner v. McDermott, Inc.*, 899 F.Supp. 1551, 1557-60 (W.D. La. 1994) (J. Doherty) (subcontract to provide welders in the construction of an offshore platform was subject to the LOIA). Furthermore, in *Meloy v. Conoco, Inc., supra*, the Louisiana Supreme Court held "La.R.S. 9:2780 nullifies completely any provision in any agreement that requires defense and/or indemnification where there is any negligence or fault on the part of the indemnitee." 504 So.3d at 838.

In the instant case, the only allegations asserted by the plaintiff against McDermott are based on McDermott's negligence or fault in the design, fabrication, and construction of the FRONT RUNNER Spar. It is of note, McDermott does not challenge the application of the LOIA to the contractual indemnity claim at issue and even appears to acknowledge that if the LOIA applies, the

---

[9] *See* Memorandum Ruling, Doc. 29, at pp. 1-2 (emphasis added).

Act would render portions of the EPCI Contract null and void "to the extent that McDermott is to be indemnified for its negligence or fault."[10] It is true, as McDermott argues, plaintiff alleged a negligence claim against Murphy as well, however the *tort* claim of plaintiff against Murphy was dismissed as Murphy is plaintiff's Longshore and Harbor Workers' Compensation Act employer. Thus, any claim plaintiff might have under the Longshore and Harbor Workers' Compensation Act is not the subject of the instant motion. Rather, the instant motion seeks dismissal *only* of McDermott's claim against Murphy for contractual indemnity, to the extent such claim for indemnification would be for McDermott's own tort negligence.

This Court notes the case of *Smith v. Seacor Marine, LLC*, 495 F.3d 182 (5th Cir. 2007), which the Court finds to be somewhat enlightening. In *Smith*, the court found the parties had a reciprocal indemnification agreement governed by Louisiana law, and the LOIA was applicable. Because the indemnitee in *Smith* contracted with the indemnitor in its capacity as a platform owner and not as a vessel owner, the court held the provisions of §905(c) were not implicated, and the LOIA invalidated the indemnification provision at issue. *See Smith*, 495 F.3d at 184-85. Additionally, the Louisiana Supreme Court has specifically held that, although indemnification agreements are void "to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee . . . ." "[a]n agreement providing for cost of defense in the event of a meritless suit against the indemnitee is outside the scope of the Act." *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La.1987). In the instant case, for whatever reason, Murphy has not asked this Court to dismiss McDermott's claim for defense costs, and this Court will only address the issues placed before it.

---

[10] *See* McDermott's opposition brief, Doc. 38, at p. 3.

After review of the briefs and the evidence presented, this Court agrees with the parties that, on its face, and given the claims remaining before this Court, Plaintiff's claim against McDermott would be for McDermott's own negligence. The indemnification agreement between Murphy and McDermott, contained within Paragraph 19.2 of the EPCI Contract, purports to protect McDermott from its own fault. McDermott seeks indemnification from Murphy for its own negligence and, it would seem, even McDermott does not dispute the LOIA would, on its face, nullify such an *indemnity* agreement. Consequently, this Court concludes the *indemnity* provision of the EPCI Contract between Murphy and McDermott is unenforceable under the LOIA to the extent the claim seeks *indemnification* from Murphy for McDermott's own acts of negligence, and Murphy's motion to dismiss McDermott's claim for indemnification – to the extent it is grounded in McDermott's own negligence – should be GRANTED. *As that is the only request for relief contained in the instant motion*, any other issues briefed by the parties are not properly before the Court at this time.[11]

## IV. Conclusion

Considering the foregoing,

IT IS ORDERED that the Motion for Partial Summary Judgment [Doc. 35] filed by Murphy Exploration and Production Co., USA is GRANTED, and McDermott's claim for contractual indemnity from Murphy – to the extent McDermott has requested indemnification from McDermott's own negligence or fault in causing the plaintiffs's alleged injuries – is DENIED AND

---

[11] This Court must note, that rather than specifically challenging the factual and legal arguments set forth by Murphy in its motion with respect *to the indemnification* claim asserted by McDermott against Murphy, McDermott focuses its response on *its claim for defense costs*, arguing the claim for *defense costs* should not be dismissed. However, McDermott's argument is misplaced, because the instant motion addresses only the contractual indemnity claim alleged by McDermott, and **expressly does not seek dismissal of McDermott's claim against Murphy for defense costs** and as neither party argues the LOIA invalidates claims for defense costs - as distinguishable from claims for indemnity, this Court takes no action with respect to McDermott's claim for defense costs. It must be noted, however, neither does this Court make any substantive ruling or finding as to those claims for defense costs, as the issue is not before this Court

DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this **20** day of February, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT
DATE 2/21/14
BY
TO